UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LEE DEARWESTER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JAN SCULLY, et al.,<br><br>　　　　　　Defendants. | No. 2: 15-cv-0457 KJN P<br><br><br><br>ORDER |

　　　　Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

　　　　Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

　　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted).

2

1  In reviewing a complaint under this standard, the court must accept as true the allegations of the
2  complaint in question, id., and construe the pleading in the light most favorable to the plaintiff.
3  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds, Davis v. Scherer, 468
4  U.S. 183 (1984).
5        Named as defendants are Sacramento District Attorney Jan Scully, Deputy District
6  Attorney Kindall, Office of the Sacramento County District Attorney, Sacramento County,
7  Sacramento County Deputy Sheriff Meux, Sacramento County Sheriff's Department, Sacramento
8  County Main Jail, Sacramento County Sheriff Scott Jones, California Department of Corrections
9  and Rehabilitation ("CDCR"), Deuel Vocational Institution ("DVI") and California State Prison-
10 Corcoran ("Corcoran").
11       Plaintiff alleges that he was held in the Sacramento County Jail as a pretrial detainee at the
12 same time as Donald Ortez-Lucero, Richard Antonio Noguera and Christopher Strong. (ECF No.
13 1 at 7.) Ortez-Lucero, Noguera and Strong were accused of the September 14, 2007 double-
14 homicide drug robbery which left 7 month old Sean Aquitana, Jr., and the baby's father, Sean
15 Aquitana, Sr., slain by gunshots. (Id.) Plaintiff was held in the jail on an unrelated case. (Id.)
16       While housed at the jail, Noguera asked plaintiff to place a personal phone call for him.
17 (Id.) After plaintiff placed the call on Noguera's behalf, defendants Scully, Kindall and Meux
18 (i.e., the prosecution team), were alerted to plaintiff's potential involvement in the case against
19 Noguera, Ortez-Lucero and Strong. (Id. at 8.) Plaintiff was then moved into a cell next to
20 Noguera's cell. (Id.) Plaintiff alleges that unbeknownst to him, he had been recruited to be the
21 prosecution's team reconnoteur. (Id.)
22       Plaintiff alleges that Noguera divulged incriminating information to him about his
23 fabricating alibi evidence. (Id.) Noguera was released from the jail as a result of that evidence.
24 (Id.) Plaintiff passed on to his (plaintiff's) attorney what Noguera had told him about fabricating
25 alibi evidence. (Id.) The prosecution team then pulled plaintiff out of the jail to take the same
26 information. (Id.)
27       Deputy Sheriff Her notified Strong about the meeting between plaintiff and the
28 prosecution team. (Id. at 9.) Strong erroneously thought that plaintiff had debriefed on him, i.e.,

1  Strong.  (Id.)  Plaintiff alleges that Deputy Her did not like plaintiff and set out this information

2  knowing that Strong would act on it to cause plaintiff harm.  (Id.)  Strong began threatening

3  plaintiff with physical harm and caused other inmates in plaintiff's housing area to do the same.

4  (Id.)  When plaintiff complained, he was told by floor officers to "handle it yourself."  (Id.)

5        Plaintiff continued to complain about Strong's threats and actions, but the prosecution

6  team kept plaintiff in close proximity to Strong.  (Id.)  Plaintiff was finally moved away from

7  Strong after writing a grievance directly to defendant Meux.  (Id.)

8        After being convicted, plaintiff was transferred into the custody of defendant CDCR in

9  July 2013.  (Id. at 10.)  After arriving at California State Prison-Lancaster ("Lancaster"), plaintiff

10  ordered a package for $931.97.  (Id.)  Plaintiff was interviewed by someone from the defense

11  team after he arrived at Lancaster.  (Id.)  At that time, plaintiff thought he was no longer needed

12  in the Strong, Ortez-Lucero, Noguera case.  (Id.)

13        On February 5, 2014, plaintiff was told to pack up his belongings because he was being

14  transferred to another facility.  (Id.)  Plaintiff was transported to multiple prisons and jails over

15  the next ten days.  (Id.)  On February 12, 2014, plaintiff was laid-over at defendant DVI.  (Id.)

16  On that date, plaintiff spoke by phone to someone who identified himself as a member of the

17  prosecution team.  (Id.)  The caller demanded plaintiff's cooperation.  (Id.)  The called told

18  plaintiff that plaintiff's proximity to Noguera and Strong was orchestrated, and that plaintiff

19  would be housed in close proximity to Ortez-Lucero when he arrived at the Sacramento County

20  Jail.  (Id. at 11.)  The caller threatened to release plaintiff in a field on his way back to Lancaster

21  and gun him down as an escape attempt if he did not cooperate.  (Id.)  The caller told plaintiff,

22  "we have a network of people in place who aren't afraid to get things done."  (Id.)  Plaintiff does

23  not remember the name of the caller.  (Id.)

24        Plaintiff was booked into the Sacramento County Jail on February 14, 2014.  (Id.)

25  Plaintiff was housed in close proximity to Ortez-Lucero.  (Id.)  Plaintiff later met with Ortez-

26  Lucero's attorney and told him about the threatening phone call.  (Id. at 12.)

27        When plaintiff returned to Lancaster, he found out that because he was not present to

28  collect his $913.97 order, it had been taken by other inmates.  (Id.)  Plaintiff alleges that, in their

defense, plaintiff had been gone for two months without informing them if plaintiff was coming back. (Id. at 13.) However, other inmates knew that plaintiff had ordered an expensive package and asked plaintiff to order packages for them. (Id.)

Plaintiff's final housing in Lancaster was in the non-disciplinary segregation unit. (Id.) In this unit, plaintiff was deprived of all previously enjoyed programs, privileges and property. (Id. at 13-14.)

On June 25, 2014, plaintiff was transferred to Corcoran. (Id. at 15.) Plaintiff was not granted an upgrade in status as he should have been upon his arrival at Corcoran. (Id.)

Plaintiff also alleges that he was denied law library access before he was moved from Lancaster to the Sacramento County Jail. (Id.) Plaintiff did not receive law library access until July 16, 2014, following his transfer to Corcoran. (Id. at 16.) Plaintiff alleges that the inadequate law library access caused injury to several of his meritorious cases. (Id.)

Plaintiff alleges that the prosecution team "manipulated" plaintiff's involvement in the case against Ortez-Lucero, Noguera and Strong. (Id. at 18.) Plaintiff alleges that the actions of the prosecution team placed plaintiff in danger of physical and emotional harm. (Id.) Plaintiff alleges that the actions of the prosecution team caused harm to his pending lawsuits, caused him to be housed in non-disciplinary housing and caused delay in the upgrade of plaintiff's status. (Id.) As relief, plaintiff seeks money damages.

At the outset, the undersigned finds that plaintiff's claims against defendants CDCR, DVI and Corcoran are barred by the Eleventh Amendment. The Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency unless the state or the agency consents to such suit. See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam). In the instant case, the State of California has not consented to suit. Accordingly, plaintiff's claims against defendants CDCR, DVI and Corcoran are legally frivolous and must be dismissed. Plaintiff should not include these defendants in any amended complaint.

For the following reasons, the undersigned finds that plaintiff's complaint does not state potential claims for relief against defendants Sacramento County District Attorney's Office,

Sacramento County, Sacramento County Sheriff's Department and Sacramento County Jail. A municipality, including a county or sheriff's department, may be liable under § 1983 if a plaintiff can show that "action pursuant to official municipal policy" caused his injury. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011); Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 691 (1978). Accordingly, a plaintiff must establish (1) he was deprived of his constitutional rights by the municipal entity and its employees acting under color of state law; (2) that the defendants have customs or policies which demonstrate a conscious or deliberate disregard for constitutional rights; and (3) that these policies were the driving force behind the deprivation of the plaintiff's rights. Gant v. Cty. of Los Angeles, 772 F.3d 608, 617 (9th Cir. 2014); see also Monell, 436 U.S. 658, 691 (1978). Herein, plaintiff does not allege that any policy of these defendants was the driving force behind the deprivation of plaintiff's constitutional rights. Accordingly, the claims against these defendants are dismissed.

Plaintiff's complaint contains no allegations linking defendant Sheriff Jones to the alleged deprivations. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

////

6

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Because plaintiff has not linked defendant Jones to the alleged deprivations, the claims against this defendant are dismissed with leave to amend.

The undersigned now turns to plaintiff's claims against defendants Scully, Kindall and Meux, i.e., the prosecution team.  Plaintiff makes several claims against these defendants.  Plaintiff's first claim appears to be that defendants ignored his complaints regarding Strong's threats and actions.  The undersigned notes that plaintiff alleges that Deputy Her, who is not named as a defendant, allegedly wrongly disclosed plaintiff's meeting with the prosecution team to Strong, which led to the threats and actions.

Prosecutors, such as defendants Scully and Kindall, are protected by absolute immunity from liability from damages under § 1983 "when performing the traditional functions of an advocate." Kalina v. Fletcher, 522 U.S. 118, 131 (1997).  Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or "investigative functions normally performed by a detective or police officer."  Id. at 126.

Plaintiff's claim that defendants Kindall and Scully disregarded his safety concerns regarding Strong does not involve their performance of traditional prosecutorial functions.  Accordingly, defendants Kindall and Scully are not entitled to absolute immunity with respect to this claim.

////

7

1   While plaintiff alleges that defendants Kindall, Scully and Meux ignored his complaints
2   regarding Strong, he also alleges that he was finally moved after writing a grievance directly to
3   defendant Meux.  In other words, defendant Meux did not disregard plaintiff's complaints
4   regarding Strong.  In order to determine whether plaintiff has stated a colorable claim for relief
5   for disregarding his safety concerns, plaintiff must describe in more detail when and how he made
6   his complaints to defendants Scully, Kindall and Meux regarding Strong, which were allegedly
7   ignored, and whether he suffered any harm as a result.  Accordingly, this claim is dismissed with
8   leave to amend because it is vague and conclusory.

9   Plaintiff goes on to allege that after he was convicted and sent to Lancaster, he believed
10  his involvement in the Noguero, Ortez-Lucero, Strong case was over.  Plaintiff alleges that he
11  discovered that his involvement was not over after he was threatened over the phone if he did not
12  cooperate in the process of being transferred back to the jail.  While plaintiff does not remember
13  the name of the person who made the threats on the phone, he alleges that the person identified
14  himself as a member of the "prosecution team."  These allegations potentially raise two claims.
15  First, plaintiff alleges that defendants failed to convey to him the full terms of his agreement to
16  cooperate with the prosecution.  Second, plaintiff alleges that he was threatened if he did not
17  return to the jail and cooperate with the prosecution.

18  The undersigned first considers plaintiff's claim that he was threatened if he did not return
19  to the jail and cooperate with the prosecution.  While plaintiff alleges that he does not remember
20  who from the prosecution team made the threats during the phone conversation, he does not
21  allege that defendants Kindall, Scully and Meux had knowledge of the threats or were involved in
22  the decision to make them.  Because plaintiff has not adequately linked these defendants to this
23  claim, this claim is dismissed with leave to amend.

24  Plaintiff also alleges that defendants Kindall, Scully and Meux failed to disclose the full
25  terms of his cooperation agreement with the prosecution.  Plaintiff alleges that he did not know
26  that he would have to return to the Sacramento County Jail.  It is difficult to evaluate this claim
27  without knowing what plaintiff understood the terms of his agreement with the prosecution to be
28  and when the terms were discussed.  "A prosecutor is granted only qualified immunity, however,

8

if he or she is performing investigatory or administrative functions, or is essentially functioning as a police officer or detective." Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). The undersigned cannot determine whether defendants acted as advocates or investigators when they discussed the terms of the cooperation agreement with plaintiff. For these reasons, this claim is dismissed with leave to amend.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Id. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

    3. Plaintiff's complaint is dismissed.

    4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

        a. The completed Notice of Amendment; and

        b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated: April 6, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Dear457.14

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK LEE DEARWESTER,

    Plaintiff,

v.

JAN SCULLY, et al.,

    Defendants.               No. 2: 15-cv-457 KJN P

NOTICE OF AMENDMENT

    Plaintiff hereby submits the following document in compliance with the court's order filed_____.

    _____    Amended Complaint

DATED:

    _____

    Plaintiff

11